UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW MCNULTY,<br><br>                              Plaintiff,<br><br>          -against-<br><br>EZE CASTLE INTEGRATION, INC.,<br>                              Defendant. | 24-CV-9983 (VSB) (RFT)<br><br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE:**

Plaintiff Mattthew McNulty brings claims under New York law against his former employer, Defendant Eze Castle Integration, Inc. ("ECI" or "Defendant"), for breach of contract, breach of an oral contract, breach of the implied covenant of good faith and fair dealing, and, in the alternative, for quantum meruit. (*See* ECF 1, Compl.) Pending before the Court is Defendant's motion to dismiss the complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (*See* ECF 66, Mot. To Dismiss.) Having carefully reviewed the parties' submissions, and for the reasons set forth below, I respectfully recommend that the motion to dismiss should be GRANTED IN PART and DENIED IN PART, in that Plaintiff's claims for breach of oral contract (Count II) and quantum meruit (Count V) should not be dismissed, but that Plaintiff's claim for breach of contract (Count I) should be dismissed without prejudice to Plaintiff's filing an amended complaint, and Plaintiff's claims for breaches of the implied covenant of good faith and fair dealing (Counts III and IV) should be dismissed with prejudice.

**FACTUAL BACKGROUND**[1]

On November 10, 2021, Plaintiff, a citizen of Florida, received an offer of employment from Defendant, a Massachusetts company with its principal place of business in Boston, to be its Chief Revenue Office ("CRO"). (*See* ECF 1, Compl. ¶¶ 1, 7-9; ECF 1-2, Offer Letter.)[2] On November 11, 2021, Plaintiff signed the Offer Letter, accepting the offer. (*See* ECF 1-2, Offer Letter at 4.) Plaintiff "acknowledge[d] that [his] employment [wa]s that of an at-will employee and that this offer letter d[id] not constitute a contractual agreement for employment for any specified term." (*Id.*)

The Offer Letter consisted of a four-page letter that set out the offer and the terms and conditions of Plaintiff's employment and compensation, and Exhibit A, a one-page sales plan for 2022. (*See generally id.*) The letter provided that Plaintiff would be Defendant's CRO, with a start date of November 29, 2022; would work remotely from Florida five days a week; would report to the Chief Executive Officer; and would be an at-will employee with a base salary of $300,000 per year; would receive an annual performance bonus with a target of $250,000, based on a combination of Plaintiff's performance and Defendant's strategy execution and achievement of sales goals; would have equity participation in the form of a grant of 8,000 stock options to acquire Defendant's common stock, based on a combination of temporal and

---

[1]    The facts in this section are drawn from the Complaint and the Offer Letter attached to the Complaint (*see* ECF 1-2, Offer Letter), which is incorporated by reference. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.")

[2]    Defendant states that it is a Delaware corporation with its principal place of business in New York. (*See* ECF 67, Defendant's Memorandum of Law.)

performance-based criteria; and would have fringe benefits, including unlimited paid time off.

(*See id*. at 1-3.) Additionally, the Offer Letter required that Plaintiff not be bound by any non-compete or confidentiality agreements that would affect his work for Defendant; pass a criminal background check and reference check; and sign additional agreements regarding confidentiality, restrictive covenants, intellectual property, securities policies, and securities trading. (*See id.* at 3.)

The first page of the Offer Letter, under the "Position and Location" section, contained the following disclaimer language:

> During your employment, you will be an employee "at will," which means that you or the Company can terminate the employment relationship at any time, and for any reason or no reason, with or without notice. By signing below you acknowledge that this letter does not constitute a contractual agreement or employment for any specified term.

(*Id.* at 1.)

The Offer Letter set out the following terms and timeline for the annual bonus:

> **Annual Performance Bonus**. The Performance Bonus will be effective 1/1/2022 with an overall target of $250,000
>
> - 50% ($125,000) of your bonus will be based on achievement of the (i) recurring Bookings target and (ii) Non-Recurring Digital Professional Services bookings target included in the 2022 sales plan (see attached Exhibit A).[3]
>
>     . . . .
>
>   o This bonus will be paid on a quarterly basis based on achievement of the 2022 plan. The quarterly bonus will be pro-rated based on achievement of quarterly targets. The overall annual bonus target will not be capped with

---

[3]     The Offer Letter defined recurring bookings and non-recurring digital professional services bookings and stated that revenue relating to stand-alone cloud services provided by third parties were not considered part of recurring bookings. (*See* ECF 1-2, Offer Letter at 2-3.)

> the opportunity to exceed 100% performance. Once the annual sales target is reached, additional achievements will continue to accrue at the same rates as outlined in the sales plan (see Exhibit A).
>
> - 50% ($125,000) of your bonus will be based on the Company's strategy execution, achievement of EBITDA target for the year, and your individual performance.

(*Id*. at 1-2 ("Annual Bonus Clause").)

The Offer Letter then described the terms relating to Plaintiff's eligibility to acquire stock options, including the amount he could acquire and the vesting timeline:

> **Equity Participation**. You will be eligible for Stock options to acquire Common Stock, which shares equally in equity proceeds and will represent a percentage of the Company. You will be awarded 8,000 Stock options to acquire Common Stock. These Stock options will vest based on a combination of time-based and performance-based criteria as follows:
>
> (1) 4,000 will be based on time-based vesting straight line of 5 years
>
> (2) 4,000 will vest based upon achievement of annual ECI EBITDA performance over 5 years
>
> . . . .

(*Id*. at 2 ("Equity Participation Clause").)[4]

The final page of the Offer Letter, where Plaintiff was directed to sign if he accepted the offer of employment, stated:

> I accept the terms of this employment offer and acknowledge that my employment is that of an at-will employee and that this offer letter does not constitute a contractual agreement for employment for any specified term.

---

[4] The Offer Letter went on to reference the possibility that Plaintiff could be eligible for an additional 8,000 stock options (*see* ECF 1-2, Offer Letter at 2) but Plaintiff does not appear to challenge Defendant's failure to award him those additional stock options.

4

(*Id*. at 4.)

Plaintiff signed the Offer Letter and began working for Defendant in November 2021 and continued working until he was terminated in May 2023. (*See* ECF 1, Compl. ¶¶ 9, 16, 23, 36.) In 2022, Plaintiff performed all or substantially all the work required by the Offer Letter, receiving a good performance rating and meeting all performance targets. (*See id.* ¶¶ 25, 35-36, 45.)[5] Defendant paid Plaintiff his base salary of $300,000 for 2022 and the first half of his annual bonus ($125,000). (*See id*. ¶ 12.) However, Defendant did not pay Plaintiff the $125,000 representing the second half of the annual bonus for 2022 and did not issue 8,000 stock options to Plaintiff. (*See id*. ¶¶ 14-15.)

Plaintiff made numerous demands that Defendant issue the 8,000 stock options and pay the remaining $125,000 of his annual bonus. (*See id.* ¶¶ 16, 23.) In or around early 2023, Defendant made a new oral offer to Plaintiff, acknowledging that he had performed well in 2022 and had earned $125,000 for the second half of his annual bonus. Defendant said that if Plaintiff did not resign, it would give him an additional 2,000 shares instead of paying the remaining $125,000 of his annual bonus. (*See id.* ¶¶ 18-19, 21-22.) Plaintiff accepted the offer and refrained from resigning from his position as Defendant's CRO. (*See id.*)

In May 2023, Defendant terminated Plaintiff's employment and told him the termination was for cause. (*See id.* ¶¶ 23-26.) Defendant did not pay Plaintiff the remaining $125,000 of his annual bonus for 2022; nor did Defendant transfer to Plaintiff 2,000 additional shares or the

---

[5]    The Complaint in Count III restarts its numbering at paragraph 38 and contains includes two paragraphs designated as each paragraph number from 38 to 48. This citation references the first paragraph 45.

8,000 original stock options. (*See id*. ¶¶ 20, 27, 29.) Around the time of Plaintiff's termination, Defendant engaged in a round of layoffs. (*See id.* ¶ 28.) Plaintiff was told that affected individuals were laid off for cause to save Defendant money. (*See id.* ¶ 29.)

**PROCEDURAL HISTORY**

On January 30, 2024, Plaintiff filed the Complaint against Defendant in the United States District Court for the Middle District of Florida, alleging claims for breach of contract, breach of an oral contract, breach of the implied covenant of good faith and fair dealing, and, in the alternative, for quantum meruit. (*See generally* ECF 1, Compl.) On February 15, 2024, Plaintiff served Defendant's registered agent. (*See* ECF 9, Proof of Serv.) On March 24, 2024, Defendant filed a motion to transfer venue to this Court, or in the alternative to dismiss. (*See generally* ECF 17, Mot.) The parties participated in mediation between April and October 2024, but they were unable to settle the case. (*See* ECF 19, Pl.'s Letter Mot.; ECF 24, Order; ECF 31, Order; ECF 38 Order; ECF 45 Order.)

The case was transferred to this Court on Plaintiff's consent. (*See* ECF 49, Mot.) Your Honor referred the case to me for general pretrial supervision and settlement on December 30, 2024. (*See* ECF 51, Order of Ref.) On March 21, 2025, Defendant filed the pending motion to dismiss and a motion to stay discovery. (*See* ECF 66, Mot. To Dismiss; ECF 67, Defendant's Mem. in Supp. of Mot. ("Def.'s Mem.").) On March 27, 2025, Your Honor amended the order of reference and referred the motion to dismiss to me for a report and recommendation. (*See* ECF 68, Am. Order of Ref.) Plaintiff filed his opposition to the motion to dismiss on April 30, 2025. (*See* ECF 71, Plaintiff's Mem. of Law in Opp. ("Pl.'s Opp.").) Defendant filed its reply on May 27,

2025. (*See* ECF 74, Defendant's Reply Mem. ("Def.'s Reply").) On June 6, 2025, I granted the

motion to stay discovery pending a decision on the motion to dismiss. (*See* ECF 75, Order.)

### LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6] "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must

accept as true all of the allegations contained in a complaint," *id.*, and must draw all reasonable

inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir.

2017). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Determining whether a complaint

states a plausible claim is a "context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* at 679.

In evaluating a Rule 12(b)(6) motion, "a district court may consider the facts alleged in

the complaint, documents attached to the complaint as exhibits, and documents incorporated

by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). On

a motion to dismiss, a court may consider certain extrinsic documents without converting to a

summary judgment motion, including documents that are attached to the complaint,

---

[6]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

incorporated by reference, integral to the complaint, or concern matters subject to judicial notice. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir. 2002) (holding that where the court is asked to consider on a motion to dismiss extrinsic evidence that is neither incorporated into the complaint nor relied upon in the drafting of the complaint, the court must either exclude the extrinsic documents, or convert the motion to a summary judgment motion); *Glob. Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154-55 (2d Cir. 2006) ("As indicated by the word shall, the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory."); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) ("On a motion to dismiss, a court may consider extrinsic materials if they are integral to the complaint or an appropriate subject for judicial notice."). A document is integral to the complaint where the "complaint relies heavily upon its terms and effect." *Chambers*, 282 F.3d at 153. Where "the claim is for breach of contract . . . , the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim." *Jones v. Mercedes-Benz, Manhattan, Inc.,* No. 19-CV-0472 (ALC), 2020 WL 1445728, at *1 (S.D.N.Y. Mar. 25, 2020). However, "a court may not resolve [a Rule 12(b)(6)] motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021).

**DISCUSSION**

I.      **Plaintiff's Breach of Contract Claim**

      A.      <u>Legal Principles</u>

Under New York law, "to establish the existence of a contract, Plaintiff must show that there was an offer, acceptance, consideration, mutual assent and intent to be bound." *Moore v. Thomson Reuters (GRC) Inc.*, 17-CV-0211 (LGS), 2017 WL 4083582, at *3 (S.D.N.Y. Sept. 14, 2027)).[7] A binding contract exists where "there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract." *Kolchins v. Evolution Mkts, Inc.*, 31 N.Y.3d 100, 106 (2018) (quoting *In re Express Indus. & Term. Corp. v. N.Y. State Dept. of Transp.*, 93 N.Y.2d 584, 589 (1999)). An enforceable agreement must be "reasonably certain in its material terms." *Kolchins*, 31 N.Y.3d at 106 (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989)). "[W]hile a mere agreement to agree, in which a material term is left for future negotiations is unenforceable, the terms of a contract do not need to be fixed with absolute certainty to give rise to an enforceable agreement." *Kolchins*, 31 N.Y.3d at 106.

"[B]ecause the meaning of a writing may be distorted where undue force is given to single words or phrases," words or phrases should not be considered in isolation. *Chacko v. Costco Wholesale Corp.* 568 F. Supp. 3d 487, 495 (S.D.N.Y. 2021); *see also Eighth Ave. Coach*

---

[7]      In their briefs, both parties apply New York contract law to the Offer Letter. I interpret the parties' reliance on New York law as agreement that New York law governs to the terms of the Offer Letter and any disputes. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (holding that the assumption in the parties' briefs "that New York law controls this issue" evidenced "implied consent . . . sufficient to establish choice of law").

*Corp. v. City of New York*, 286 N.Y. 84, 88 (1941) ("[A] contract must be read as a whole in order to determine its purpose and intent, and . . . single clauses cannot be construed by taking them out of their context . . . .").

When a court is assessing "whether the course of conduct and communications between the parties have created a legally enforceable agreement," the court must look "to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds," without disproportionately emphasizing "any single act, phrase or other expression," but rather considering the totality of "the situation of the parties and the objectives they were striving to attain." *Kolchins*, 31 N.Y.3d at 106.

On a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). An "exchange" in which one party offers and another accepts, followed by the parties' performance in accordance with the terms of an alleged contract, "sufficiently evinces an objective manifestation of an intent to be bound" and therefore is sufficient to defeat a motion to dismiss based on an argument that the parties did not create a legally enforceable agreement. *Kolchins*, 31 N.Y.3d at 107-08.

To plead a breach of contract, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. Dec. 5, 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Moreover, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund*, 837 F. Supp. 2d at 189.

10

Under New York law, whether a contract is to be enforced only in its entirety or is severable "generally is a question of intent to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted." *See Christian v. Christian*, 42 N.Y.2d 63, 73 (1977) (holding that a contract's express language evinced the parties' intent to make the contract severable). While a severability clause is not necessary to find a contract servable, the lack of a severability clause "militates against a finding of severability." *Mun. Cap. Appreciation Partners. I, LP v. Page*, 181 F. Supp. 2d 379, 395 (S.D.N.Y. 2002).

In determining whether to find a contract severable, a court must assess whether "(1) the parties' performances can be apportioned into corresponding pairs of partial performances, and (2) the parts of each pair can be treated as agreed equivalents." *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1098 (2d Cir. 1992) (finding a contract to be "a unified, inseparable whole," based on the form and language of the contract, which had "no express severability clause"); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 328 (S.D.N.Y. 2009) (finding a contract not to be severable where the contractual language unambiguously evinced an intent to treat the contract as a whole); *cf. Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972) (finding "the conclusion of separateness . . . all but inescapable" when agreements involved separate parties and had been executed on different dates); *Sasson v. Mann*, No. 15-CV-6601 (CS), 2019 WL 3532155, at *11 (S.D.N.Y. Aug. 2, 2019) (denying summary judgement on a breach of contract claim due to ambiguity about the parties' intent to make the contract severable, where the contract used singular nouns to reference the agreement, lacked a severability clause, and lacked obvious unit-for unit-transactions, but referenced "mutual

11

covenants and promises" and contained information on the consideration associated with various parts of the agreement).

A.   Existence of an Enforceable Agreement

Defendant argues that the Complaint does not plausibly allege the existence of an enforceable agreement, because the signed Offer Letter was not a binding contract but merely an "agreement to agree" on the terms of Plaintiff's employment. (ECF 67, Def.'s Mem. at 1, 7, 9.) Specifically, Defendant argues that despite the unequivocal offer of employment in the Offer Letter and Plaintiff's acceptance and subsequent performance, the Offer Letter did not constitute a binding contract because (1) the disclaimer included on the first page was evidence of a "broad-based intent to eschew contractual obligations"; (2) the Annual Bonus Clause included "discretionary and not guaranteed compensation"; and (3) the Equity Participation Clause "lack[ed] the specificity necessary to create an enforceable contract." (*Id.* at 1, 4-5, 7, 9; *see also* ECF 74, Def.'s Reply at 1-6.)

Plaintiff counters that the Offer Letter "set[ ] out the terms and conditions of Plaintiff's employment" – his position and direct supervisor; his base salary, frequency of payment, and fringe benefits; his work location and hours; requirements before starting and start date; and the structure of his annual performance bonus and equity participation rights – and as such was sufficiently definite to create a binding contract. (ECF 71, Pl.'s Opp. at 4 (citing ECF 1-2, Offer Letter at 1-2).) Plaintiff points out that he signed the Offer Letter and met all the requirements, working for Defendant as its CRO from November 29, 2021 until his termination in May 2023, and that Defendant paid his $300,000 base salary and the first half of the annual performance bonus ($125,000) based on his strong performance in 2022. (*See* ECF 71, Pl.'s Opp. at 4; *see also*

12

ECF 1, Compl. ¶¶ 9, 12, 31.) Plaintiff concludes that the parties' course of conduct reflected an intent to be bound by the terms of the Offer Letter. (*See* ECF 71, Pl.'s Opp. at 6, 12-13.)

Plaintiff goes on to contend that the disclaimer language was insufficiently broad to indicate a lack of intent to be bound, particularly since the disclaimers were situated within sections discussing at-will employment; that the Annual Bonus Clause did not give Defendant discretion over whether Plaintiff would receive a bonus; and that the Equity Participation Clause was sufficiently concrete for the Offer Letter to be enforceable. (*See id.* at 11-17.)

1.  The Disclaimer Language and the Parties'
    Intent To Be Bound by the Offer Letter

The first page of the Offer Letter stated that Plaintiff would be an at-will employee and contained the following disclaimer: "By signing below you acknowledge that this letter does not constitute a contractual agreement or employment for any specified term." (ECF 1-2, Offer Letter at 1.) The final page of the Offer Letter, where Plaintiff was directed to sign if he accepted the offer of employment, stated that Plaintiff acknowledged his status as an at-will employee and that the Offer Letter "d[id] not constitute a contractual agreement for employment for any specified term." (*Id*. at 4.)

Defendant argues that the statement in the first disclaimer – that the Offer Letter "does not constitute a contractual agreement or employment for any specified term" – evinced the parties' intent not to be bound by the Offer Letter. (*See* ECF 67, Def.'s Mem. at 5; ECF 74, Def.'s Reply at 5-6.) Plaintiff counters that regardless of a typographical error in the first disclaimer – the text stated that the letter did not "constitute a contractual agreement **or** employment for any specified term" rather than that the letter did not "constitute a contractual agreement **for** employment for any specified term" – the Offer Letter reflected an "understanding that

Plaintiff's employment [was] at will, but without any predetermined length." (ECF 71, Pl.'s Opp. at 14.)

"In cases in which the defendant relies on a disclaimer to defeat a contract claim, courts look to the language of the disclaimer as well as the expressed intent of the parties in order to determine whether a contract was entered." *Twomey v. Quad/Graphics, Inc.*, No. 13-CV-1109 (RA), 2015 WL 5698002, at *12 (S.D.N.Y. Sept. 28, 2015) (collecting cases). Where an offer letter contains disclaimer language that unambiguously and expressly disavows the parties' intent to create a contract, a breach of contract claim will not survive. *See, e.g., id.* at *11-14 (granting summary judgement on a breach of contract claim because no reasonable juror could conclude that the offer letter – which expressly stated that "while we ask you to sign this letter, please do not construe this offer as an employment contract" – was an enforceable contract). However, the cases finding that a disclaimer in an offer letter reflected the parties' determination not to be bound all involved broad and clear language expressing the parties' intentions. *See, e.g., Moore*, 2017 WL 4083582, at *3 (rejecting the plaintiff's claim that an offer letter constituted an enforceable agreement where its express terms included disclaimers stating that "nothing in this offer letter should be construed as creating a contract of employment," "no representation . . . can constitute a contract of employment . . . other than a document signed by the Human Resources Director," and "all . . . terms of employment are subject to change . . . as The Company determines."); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320-21 (S.D.N.Y. 2012) (rejecting the plaintiff's claim that an offer letter and accompanying compensation plan constituted enforceable agreements where both documents expressly stated that "neither the [compensation plan] nor this acknowledgement are contracts," that the plan is "not a contract

14

of employment," and that it "was subject to change"); *Barker v. Time Warner Cable, Inc.*, 897

N.Y.S.2d 668, at *1 (Nassau. Cnty. Sup. Ct. July 1, 2009) (rejecting the plaintiff's claim that an

offer letter constituted an enforceable contract where it "plainly stated" that "[t]his letter

constitutes a summary of some of the key points of our offer for employment and is not a

contract of employment or a guarantee of employment or compensation"), *aff'd*, 923 N.Y.S.2d

118 (2d Dep't 2011).

By contrast, Courts in this District have construed more limited disclaimer language,

particularly when located in a discussion of at-will employment, to reflect an intent to create an

enforceable contract for at-will employment. For example, in *Arakelian v. Omnicare*, this Court

held that a disclaimer in an offer letter stating that the letter "d[id] not constitute a contract or

promise of employment for any specific length of time . . . d[id] not mean that the Offer Letter

[wa]s not a contract; rather, it mean[t] that [the plaintiff-employee] would be an at-will

employee subject to discharge at any time." 735 F. Supp. 2d 22, 32 (S.D.N.Y. 2010); *see also*

*Jones*, 2020 WL 1445728, at *4 (finding that an offer letter with a disclaimer stating that

"nothing in [the offer letter] is intended to create a contract of continued employment, or bind

[the plaintiff] to a specific period of employment" immediately followed by the phrase "[a]ll

employees of the company are subject to the Employment at will doctrine" constituted an

enforceable contract for at-will employment); *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-

2810 (KMK), 2018 WL 4386092, at *12-13 (S.D.N.Y. Sept. 14, 2018) (same for a similar disclaimer

within a clause discussing at-will employment).

The disclaimers in the Offer Letter are akin to the limited disclaimers found to reflect an

intent to create an enforceable agreement for at-will employment. (*See generally* ECF 1-2, Offer

Letter.) There is no request for Plaintiff to sign notwithstanding that the Offer Letter was not a contract, as was the case in *Twomey v. Quad/Graphics. See* 2015 WL 5698002, at *12. There is no indication that the terms of employment were subject to change, as was the case in *Cohen v. Avanade* and *Moore v. Thomson Reuters,* or that only a representative of the human resources department could sign an employment contract for the company, as was the case in *Moore*. *See Cohen,* 874 F. Supp. 2d at 320-21; *Moore,* 2017 WL 4083582, at *3. And there is no explanation that the document is a summary of terms rather than a contract, as was the case in *Barker v. Time Warner Cable. See* 897 N.Y.S.2d, at *1.

Rather, the Offer Letter's second disclaimer provided that "this offer letter does not constitute a contractual agreement for employment for any specified term" (ECF 1-2, Offer Letter at 4) – a statement for which the most natural interpretation is that the Offer Letter was a contract for at-will employment. The first disclaimer stated that the Offer Letter "does not constitute a contractual agreement or employment for any specified term" (*id.* at 1), which Defendant interprets as disavowing that the document was a contract (*see* ECF 67, Def.'s Mem. at 5) – a reading that might be plausible if the disclaimer were considered in isolation (although the construction raises the question how to interpret the clause "or employment for any specified term," since Defendant's proffered interpretation suggests that the Offer Letter could "constitute" employment). But Defendant's suggested reading is implausible when the disclaimer is considered in context. *See, e.g., Eighth Ave. Coach*, 286 N.Y. at 88 (discussing the importance of reading contractual clauses in context).

The disclaimers in the Offer Letter, like those at issue in *Jones v. Mercedes Benz*, *Arakelian v. Omnicare*, and *Kamdem-Ouaffo v. Balchem*, were situated within discussions of at-

16

will employment and could be interpreted as specifying that the employment being offered was at-will employment; in each of those cases, this Court found that the offer letters constituted enforceable contracts for at-will employment. *See Jones*, 2020 WL 1445728, at *4; *Arakelian*, 735 F. Supp. 2d at 32; *Kamdem-Ouaffo*, 2018 WL 4386092, at *12-13.

Because the Court must draw every reasonable inference in Plaintiff's favor on this motion to dismiss, I conclude that Plaintiff has plausibly pleaded that the Offer Letter was intended to be an enforceable contract for employment at will.

### 2. The Annual Bonus Clause

Defendant next argues that Plaintiff's breach of contract claim for nonpayment of the full amount of the 2022 annual bonus should be dismissed because the Offer Letter did not obligate Defendant to pay the full bonus, which was discretionary. (*See* ECF 67, Def.'s Mem. at 7-9.) Plaintiff does not expressly address whether the bonus was discretionary; rather, Plaintiff argues that he is owed the second half of the annual bonus because he earned it "by achievement of the bonus metrics." (ECF 71, Pl.'s Opp. at 11, 15) – a position that implicitly relies on the premise that the bonus was not fully discretionary. Citing New York's "long standing policy against forfeiture of earned wages," Plaintiff asserts that the annual bonus was "an integral part" of his compensation and that the Court should enforce Defendant's payment obligation. (*Id.* at 11 (quoting *Mirchel v. RMJ Sec. Corp.*, 613 N.Y.S.2d 876, 878 (1st Dep't 1994).)[8]

It is well settled under New York law that a plaintiff cannot recover for an employer's failure to pay a bonus if the employer had absolute discretion over the decision to award a

---

[8]    Defendant concedes that Plaintiff earned and received the first half of the annual bonus. (*See* Def.'s Mem. at 4.)

bonus. *See, e.g., Barker v. Bancorp, Inc.*, No. 21-CV-0869 (KPF), 2022 WL 595954, at *7 (S.D.N.Y. Feb. 25, 2022) (dismissing the plaintiff's contract claims based on unpaid bonuses where the contract stated that "you will be eligible for a discretionary Bonus at the discretion and approval of the company," which vested the employer with absolute discretion over bonuses). However, New York also has "a long-standing policy against forfeiture of earned wages, which may apply to bonuses as well." *Doolittle v. Nixon Peabody LLP*, 6 N.Y.S.3d 864, 866 (4th Dep't 2015); *see also Mirchel*, 613 N.Y.S.2d at 878 ("Employees in this State may enforce an agreement to pay an annual bonus made at the onset of the employment relationship where such bonus constitutes an integral part of plaintiff's compensation package."). As a result, "absolute discretion must be stated unambiguously in the contractual documents to justify dismissal of a bonus claim." *LonghI v. Lombard Risk Sys., Inc.*, No. 18-CV-8077 (VSB), 2019 WL 4805735, at *5-7 (S.D.N.Y. Sept. 30, 2019) (declining to dismiss a bonus claim where the contract gave the defendant-employer some discretion but did "not unambiguously and conclusively vest defendant with all discretion"); *Ashmore v. CGI Grp., Inc.*, No. 11-CV-8611 (LBS), 2012 WL 2148899, at *8 (S.D.N.Y. June 12, 2012) (declining to dismiss a bonus claim where the contract gave the employer considerable discretion but did not unambiguously indicate that the employer had "absolute discretion").

Total "discretion will not be implied if there exists no contractual provisions assigning the employer absolute discretion to pay such compensation." *O'Shea v. Bidcom, Inc.*, No. 01-CV-3855 (WHP), 2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002); *see also Fishoff v. Coty Inc.*, 634 F.3d 647, 653-54 (2d Cir. 2011) (finding that the employer's discretion to modify the share value of an option after an employee validly exercised his options was limited where the contract was

silent as the amount of discretion retained by the defendant-employer); *Culver v. Merrill Lynch & Co., Inc.*, No. 94-CV-8124 (LBS), 1995 WL 422203, at *3 (S.D.N.Y. July 17, 1995) (concluding that it was not "absolutely clear that [the employer] was to have complete discretion in determining whether to award any compensation to [the plaintiff]" in the absence the "magic words"); *Longhi*, 2019 WL 4805735, at *5 (holding that a provision that "the basis on which your bonus is calculated may vary at the discretion of the company" gave the employer some but not absolute discretion); *Bravia Cap. Partners, Inc. v. Fike*, No. 09-CV-6375 (JFK), 2011 WL 6081345, at *3 (S.D.N.Y. Dec. 6, 2011) (holding that the defendant-employer did not have complete discretion over bonus distribution where the contract provided that the employee "w[ould] be entitled to a bonus").

Courts have found contracts to give the employer unambiguous, absolute discretion over bonuses based on references to discretion and reservation of the right to modify, suspend, or terminate the bonus program or to review the compensation plan. *See, e.g., Barker*, 2022 WL 595954, at *8; *Alam v. Fairstead Mgmt. LLC,* No. 24-CV-0849 (NRB), 2025 WL 622587, at *3 (S.D.N.Y. Feb. 26, 2025) (holding that the employer had absolute discretion where the contract explicitly stated that the bonuses were "discretionary," that an employee's "Active Working Status" "d[id] not mean that [the employee was] entitled to a bonus, and that the employee's bonus "may be zero except as otherwise provided herein"); *Cohen*, 874 F. Supp. 2d at 321 (holding that the employer had absolute discretion where the compensation plan provided that the employer could "interpret and apply the [compensation plan] as it deem[ed] appropriate" and "reserve[d] the right to modify, suspend or terminate" the compensation plan "at its sole and absolute discretion"); *Valentine v. Carlise Leasing Int'l Co.*, No. 97-CV-1406 (RSP) (GJD), 1998

19

WL 690877, at *3 (N.D.N.Y Sept. 30, 1998) (holding that the employer had absolute discretion over bonuses where the offer letter provided that the employee would be "eligible for" a bonus but was not promised one, that the bonus depended on both the performance of the employee and the company, and that the employer would continue to review the compensation program).

The Offer Letter's Annual Bonus Clause stated that "[t]he performance bonus w[ould] be effective 1/1/2022 with an overall target of $250,000" and listed the criteria on which the bonus would be based: "50% ($125,000) of your bonus will be based on achievement of the (i) Recurring Bookings target and (ii) Non-Recurring Digital Professional Services bookings targets included in the 2022 sales plan [attached to the offer letter]" and "50% ($125,000) of your bonus will be based on the Company's strategy execution, achievement of EBITDA target for the year, and your individual performance." (ECF 1-2, Offer Letter at 1-2.)[9] There was no mention of discretion and no reservation of the right to modify, suspend, or terminate the annual bonus.

That the bonus was linked to Plaintiff's job performance and Defendant's performance did not unambiguously give Defendant absolute discretion. *See Ashmore*, 2012 WL 2148899, at *8 (contract language linking the receipt of an annual bonus to job performance did not unambiguously grant the employer absolute discretion over bonus decisions but instead constrained its discretion by an obligation to base the bonus on the employee's job performance). Unlike in *Valentine v. Carlise Leasing International,* where the court dismissed a breach of contract claim based on a bonus provision that "indicated only generally that [the plaintiff's] entitlement to a bonus would depend on his performance and that of the company

---

[9]    Defendant paid Plaintiff the first half of the annual bonus ($125,000) based on Plaintiff's achievement of the bookings targets, as defined in the Sales Plan for 2022. (*See* ECF 1-2, Offer Letter Ex. A; ECF 1, Compl. ¶ 12; ECF 67, Def.'s Mem. at 4.)

but did not set forth specific objective criteria on which [the employer] would base its decision," 1998 WL 690877, at *3, the Offer Letter included the bases on which Plaintiff's performance would be assessed: Plaintiff was expected to achieve recurring bookings and non-recurring bookings targets and assist in the Company's strategy execution and achieve EBITDA targets for the year. (*See* ECF 1-2, Offer Letter, at 1-2.)

Moreover, the statement that "your bonus" "w[ould] be based on" certain criteria, namely the achievement of the bookings targets and sales goals, and the reference to specific dollar amounts (ECF 1-2, Offer Letter at 1) can be "reasonably read to evidence the parties' intent to be contractually obligated." *Longhi*, 2019 WL 4805735, at *6 (holding that contract provision that "your bonus" "will be set at $300,000" implied that the bonus "belonged to Plaintiff," was guaranteed, and was "fixed and not conditional, so long as the targets were met"); *see also O'Shea*, 2002 WL 1610942, at *4 (finding the use in the plaintiff's incentive plan of the phrase "is earned upon . . . attainment of goals prescribed" was evidence that the employer was contractually obligated to pay the incentives).

Granting all favorable inferences to Plaintiff, I conclude that the Complaint adequately pleads that Defendant lacked complete discretion over his annual bonus and therefore that the Offer Letter included an obligation to pay the full bonus if the performance metrics were met.

### 3. The Equity Participation Clause

Defendant also argues that the Equity Participation Clause "lack[ed] the specificity to create an enforceable contract," in that it failed to set forth the following necessary terms:

> the type of options to be issued (e.g., incentive stock options or non-qualified stock options), the date of the grant, the strike price of Plaintiff's purported stock options, the vesting schedule or terms, how the strike price is to be paid (i.e., in cash or otherwise), or the expiration date or termination terms.

21

(ECF 67, Def.'s Mem. at 9.) Plaintiff responds that there is an objective method by which the Court can determine the missing terms: the date of stock grant should be Plaintiff's employment date, and the remaining terms may be borrowed from Defendant's stock option plan, which was attached to Defendant's motion to dismiss. (*See* ECF 71, Pl.'s Opp. at 16; *see also* ECF 66-1, Exhibit A to Def.'s Mot. To Dismiss, Stock Option Plan ("Stock Option Plan").).

Defendant is correct that contracts, including ones involving stock options, must be reasonably definite in their material terms to be enforceable. *See Sugerman v. MCY Music World, Inc.* 158 F. Supp. 2d 316, 324 (S.D.N.Y. 2001) (collecting cases). Contracts awarding stock options must reflect "mutual assent as to the material terms of any stock option arrangement, including: how many options might be granted of what class of stock; when the option might be granted; the option term; the exercise price; and the expiration date." *Id.*; *see also Tierney v. Omnicom Grp. Inc.*, No. 06-CV-14302 (LTS) (THK), 2007 WL 2012412, at *5 (S.D.N.Y. July 11, 2007) (dismissing a claim for breach of contract where the stock option provision failed to include a "critical element" – the strike price of the initial award – as well as the types of performance that would merit additional awards, when additional awards would be made, how many additional shares would be granted, and the strike prices for additional options); *Haller v. Usman*, No. 24-CV-0977 (KPF), 2025 WL 605572, at *6 (S.D.N.Y. Feb. 25, 2025) (finding that a stock option provision was unenforceable because the promise of a "onetime stock award equivalent to 10% of the Company failed to include the essential element of the timing of the stock award"); *Kunica v. St. Jean Fin., Inc.*, 1998 WL 437153, at *6 (S.D.N.Y. Aug. 3, 1998) (concluding that an oral agreement to grant stock options was unenforceable because it was silent as to the number of options to be awarded and the exercise price and date).

However, "[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear"; finding an agreement to be unenforceable because its terms are indefinite should be a last resort. *Cobble Hill Nursing Home,* 74 N.Y.2d at 483. "Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties," such as by looking to the agreement itself or "by reference to an extrinsic event, commercial practice or trade usage." *Id.*; *see also Metro-Goldwyn-Mayer v. Scheider*, 40 N.Y.2d 1069, 1070-71 (1976) (enforcing an oral contract where the parties had agreed to the essential terms and performance had begun and holding that the court could fill in unsettled terms by reference to objective criteria such as industry custom).

The Equity Participation Clause in the Offer Letter contains the following material terms: the number of stock options (8,000); the type of stock (common stock); when the options would vest (straight line vesting of 4,0000 options over five years and 4,000 options vesting upon achievement of Defendant's EBITDA performance targets over five years). (*See* ECF 1-2, Offer Letter at 2.) However, the Offer Letter is silent on the strike/exercise price, date of the grant, expiration date of the options, and when the options could be exercised. (*See id*.) Defendant concludes that any breach of contract claim based on the Equity Participation Clause should be dismissed because that clause is insufficiently definite. Plaintiff counters that the Court can determine the missing terms using objective methods. (*See* ECF 71, Pl.'s Opp. at 16.)

Defendant attached a copy of its Stock Option Plan to the motion to dismiss; the attachment is undated and incomplete, in that it references exhibits that were not included on

23

the docket. (*See* ECF 66-1, Stock Option Plan.) The Stock Option Plan is neither incorporated by reference in nor integral to the Complaint, which does not mention or attach the Stock Option Plan; and there is no evidence that Plaintiff was provided with the Stock Option Plan before Defendant moved to dismiss. (*See generally* ECF 1, Compl.; ECF 1-2 Offer Letter; *see also* ECF 71, Pl.'s Opp. at 16; ECF 74, Def.'s Reply at 2-3.) While Plaintiff urges the Court to use the Stock Option Plan to supply the missing terms (*see* ECF 71, Pl.'s Opp. at 16), this request runs afoul of the prohibition against relying upon extrinsic materials that are not integral to the complaint or incorporated by reference. *See Chambers,* 282 F.3d at 154 (holding that certain unsigned agreements were not integral to the complaint and therefore could not be considered on a motion to dismiss, where the plaintiff did not reference the agreements in the complaint and had not relied on the agreements when drafting the complaint); *Glob. Network Commc'ns, Inc.,* 458 F.3d at 154-55.

The Court should not consider the Stock Option Plain in connection with the pending motion to dismiss. Accordingly, even granting all favorable inferences to Plaintiff, I conclude that the Complaint fails adequately to allege that Equity Participation Clause is sufficiently definite to be enforceable.

### 4. Severability

Defendant argues that lack of enforceability of the Annual Bonus Clause and of the Equity Participation Clause each independently renders the entire Offer Letter invalid (*see* ECF 67, Def.'s Mem. at 6-10); this position implies that the Offer Letter is not severable. Plaintiff does not expressly address this argument. However, the Complaint does not suggest that the Equity Participation Clause is severable from the rest of the Offer Letter, and Plaintiff consistently refers

24

to the Offer Letter as a singular agreement: the "agreement" or "the employment agreement." (*E.g.,* ECF 71, Pl.'s Opp. at 6, 8-9, 13; ECF 1, Compl. ¶¶ 11, 29, 33.)

The lack of a severability clause in the Offer Letter (*see generally* ECF 1-2, Offer Letter) militates against a finding of severability. *See Mun. Cap. Appreciation Partners. I*, 181 F. Supp. 2d at 395; *Ginett*, 962 F.2d at 1098. Moreover, the Offer Letter provides that Plaintiff's base salary, bonus, and equity participation rights were all based on Plaintiff's work as Defendant's CRO. (*See generally* ECF 1-2, Offer Letter.) As a result, the Offer Letter contains no obvious unit-for-unit transaction, and there is no simple way to apportion performance, which further supports the conclusion that the Offer Letter is not severable. *See Ginett*, 962 F.2d at 1098 (finding that a contract was not severable where the parties used singular nouns to refer to the agreement, which contained no express severability clause, "no obvious unit-for unit transaction," and "no way to determine the agreed-upon consideration for each part of the contract").

\*\*\*

Because the Equity Participation Clause cannot be severed from the Offer Letter, I conclude that the Complaint's failure to allege that the Equity Participation Clause was sufficiently definite means that the Complaint fails to allege that the Offer Letter as a whole was an enforceable agreement. *See GEM Advisors*, 667 F. Supp. 2d at 327 ("Where a provision of a contract is unenforceable because of an indefinite term, the whole contract is unenforceable unless the contract is severable."). I therefore respectfully recommend that Your Honor should **GRANT** Defendant's motion to dismiss Plaintiff's claim for breach of the Offer Letter.

In case Your Honor disagrees with this conclusion, and because I recommend permitting Plaintiff an opportunity to file an amended complaint, *see infra* Part V, I address Defendant's

25

other arguments in support of its motion to dismiss Plaintiff's claim for breach of the Offer Letter.

B.    Adequate Performance Under the Contract

Defendant argues that Plaintiff has not adequately alleged performance under the Offer Letter, as required to state a claim for breach of contract, because Plaintiff has not alleged that his performance was sufficient or that Defendant met its "strategy execution" and EBITDA goals. (*See* ECF 67, Def.'s Mem. at 4, 8.)

Plaintiff responds that, with respect to his own performance, the Complaint alleges that he was paid his base salary and the $125,000 reflecting the first half of his annual bonus (*see* ECF 1, Compl. ¶ 12); that Defendant, referring to the second half of Plaintiff's annual bonus, "acknowledged that a $125,000 annual bonus had been earned" (*id.* ¶ 19); that his job description required him to obtain recurring bookings and non-recurring digital professional services bookings as well as other deals and projects associated with Defendant's "product implementation and customer onboarding" and to work towards the goals in the 2022 Sales Plan (ECF 1-2, Offer Letter at 2); and that he "did all, or substantially all, of the essential things which the contract [attached to the complaint] required him to do or was excused from doing those things" (ECF 1, Compl. ¶ 35).

With respect to whether Plaintiff has adequately alleged that Defendant met its strategy execution and EBITDA goals, the Complaint alleges that "[a]ll conditions required by the contract for [Defendant's] performance had occurred" (ECF 1, Compl. ¶ 36) and that Defendant acknowledged that he earned the second half of his performance bonus (*see id.* ¶ 19). Plaintiff argues that, as Defendant's CRO, he was "responsible for executing the company's strategic

26

goals," so that when he "me[t] his performance targets, those targets reflect[ed] or [we]re directly based on the company's performance targets." (ECF 71, Pl.'s Opp. at 19.)

The allegations in the Complaint, viewed in the light most favorable to Plaintiff, sufficiently plead Plaintiff's performance under the Offer Letter. Accordingly, Defendant's motion to dismiss the breach of contract claim should be denied to the extent the motion is predicated on a theory that the Complaint does not adequately allege performance under the Offer Letter.

C.    Material Breach of Contract and Damages

Defendant's argument that there was no material breach of the Offer Letter because the second half of the annual bonus was conditional on both Plaintiff's and Defendant's meeting performance targets (*see* ECF 67, Def.'s Mem. at 7-9; ECF 74, Def.'s Reply at 4-5) is premised on the misapprehension that the Complaint contains no allegations concerning the necessary conditions to award the second half of the bonus – allegations that Plaintiff's job performance was adequate and that Defendant achieved its EBITDA targets. The Complaint alleges that "[a]ll conditions required by the contract for [Defendant's] performance had occurred" (ECF 1, Compl. ¶ 36) and that Defendant acknowledged that he earned the second performance bonus (*see id.* ¶ 19). Plaintiff concludes that, because he was "responsible for executing the company's strategic goals," when he "me[t] his performance targets, those targets reflect[ed] or [we]re directly based on the company's performance targets." (ECF 71, Pl.'s Opp. at 19.)

To the extent that the Complaint adequately alleges that the Offer Letter is an enforceable contract, the Complaint, viewed in the light most favorable to Plaintiff, adequately alleges that Defendant materially breached that contract by failing to pay Plaintiff's full bonus

27

and failing to issue the promised stock options and that Plaintiff was harmed thereby. *See Jones*, 2020 WL 1445728, at *8 (finding that allegations that the defendant had failed to pay an employee's commissions in addition to his salary as outlined in the "letter/contract" sufficiently pleaded a material breach of the contract); *Hallet v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 305 (S.D.N.Y. 2020) (finding that a plaintiff had stated a claim for breach of contract where he plausibly alleged that he was entitled to a reasonably calculable annual bonus as an integral part of his compensation package but that the defendant had failed to pay).

Defendant's further contention – that even if the Offer Letter is an enforceable contract, there was no harm to Plaintiff in failing to issue the stock options, because the options would have been canceled upon Plaintiff's termination for cause or within 30 days after his separation from the company for any other reason (*see* ECF 67, Def.'s Mem. at 9-10; ECF 74, Def.'s Reply at 1-4) – is misplaced. One can infer from the Stock Option Plan that, had Defendant issued the stock options as required by the Offer Letter, some of those options would have vested before Plaintiff's termination, meaning that Plaintiff could have exercised those options. (*See* ECF 1-2, Offer Letter at 2) (providing that 20% of 4,000 options would vest one year after Plaintiff began working for Defendant and additional options would vest after a year if Defendant met certain performance targets).) If the Complaint adequately alleges that the Equity Participation Clause was sufficiently definite to create an enforceable contract, Defendant's failure to issue the stock options would constitute a material breach that harmed Plaintiff. *See Jones*, 2020 WL 1445728, at *8.

To the extent that the Complaint adequately alleges that the Offer Letter was an enforceable contract, the Complaint, viewed in the light most favorable to Plaintiff, sufficiently

pleads a material breach by Defendant of the terms of the Offer Letter and resulting harm to Plaintiff. Accordingly, Defendant's motion to dismiss the breach of contract claim should be denied to the extent the motion is predicated on a theory that the Complaint does not adequately allege a material breach of the Offer Letter and harm to Plaintiff as a result.

## II.    Plaintiff's Breach of Oral Contract Claim

Plaintiff also alleges breach of an oral contract that he and Defendant entered into in early 2023, under which Defendant would give him an additional 2,000 shares instead of paying him $125,000 (the remaining half of his 2022 annual performance bonus) in consideration for Plaintiff's continued service as Defendant's CRO. (*See* ECF 1, Compl. ¶ 41.)[10] Defendant argues that the Complaint lacks sufficient detail to adequately plead the formation of an oral contract and that even if Defendant had promised that it would award Plaintiff 2,000 shares, the Complaint fails to allege that Plaintiff provided consideration in exchange. (*See* ECF 67, Def.'s Mem. at 11.) Plaintiff responds that he has supplied all the detail required on a motion to dismiss and that his continued service as Defendant's CRO after it failed to pay his full bonus was in consideration of Defendant's commitment to award him 2,000 shares. (*See* ECF 67, Def.'s Mem. at 12.)

### A.    Legal Principles

"[O]ral contracts are as enforceable as . . . written one[s]." *Anders v. Verizon Commc'ns Inc.,* No. 16-CV-5654 (VSB), 2018 WL 2727883, at *8 (S.D.N.Y. June 5, 2018). A court assessing a claim for breach of an oral contract "must ascertain that a contract was made and that its terms

---

[10]    This citation is to the first paragraph 41.

[we]re definite." *See id*. The elements of a claim for breach of contract are the same whether the contract is oral or in writing. *See Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 144 (S.D.N.Y. 2023) (setting out the elements of a claim for breach of an oral contract). However, as a practical matter, "the burden of establishing the terms of the verbal contract – which falls to the proponent – presents a formidable obstacle to its enforcement." *Anders*, 2018 WL 2727883, at *8; *see also Cleveland Wrecking Co. v. Hercules Constr. Corp.*, 23 F. Supp. 2d 287, 293 (E.D.N.Y. 1998) ("A plaintiff faces a heavier burden when trying to prove an alleged oral contract.").

B.      Analysis

Plaintiff relies on *Kaplan v. Aspen Knolls Corp.* for the proposition that on a motion to dismiss a plaintiff is "not required to provide details about how the contract was formed, such as who bound defendants, when the agreement was entered into, and when the bonus would be paid." (ECF 71, Pl.'s Opp. at 18 (citing *Kaplan,* 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003)).) In *Kaplan*, the defendants argued that the alleged oral contract was "too vague because plaintiff ha[d] failed to allege: (1) who bound defendant to the oral contract; (2) when the agreement was entered into; (3) when the . . . bonus . . . was to be paid to him; and (4) whether the bonus was to be paid to him." 290 F. Supp. 2d at 338. The court ruled that the defendants' arguments did not warrant dismissal at the pleading stage, because pleading each detail of the oral contract was unnecessary if the plaintiff provided "a short and plain statement of the claim showing" that he was "entitled to relief." *Id.* at 335 (quoting Fed. R. Civ. P. 8(a)(2)).

Like the plaintiff in *Kaplan*, Plaintiff has sufficiently alleged the elements of a claim for breach of oral contract: that Defendant orally offered to give him 2,000 shares in lieu of paying

him the remaining $125,000 of his annual bonus if he would continue serving as CRO (*see* ECF 1, Compl. ¶ 21); that he accepted the offer and continued working for Defendant because of Defendant's commitment (*see id*. ¶¶ 21, 32); that Defendant breached the oral agreement by failing to give him 2,000 shares or to pay him $125,000 (*see id.* ¶¶ 46-47); and that as a result he suffered damages in the form of lost compensation (*see id.* ¶ 48).[11]

Defendant's argument that Plaintiff's claim for breach of an oral contract fails because Plaintiff has not sufficiently alleged consideration in exchange for the 2,000 shares (*see* ECF 67, Def.'s Mem. at 12) also falls short. It is well-settled under New York law that an at-will employee's continued performance is sufficient consideration to support an enforceable contract. *See, e.g., Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 223-24 (S.D.N.Y. 2013) (collecting cases); *Kaplan*, 290 F. Supp. 2d at 338 (holding that that "the continued service by an employee is sufficient consideration to support an employer's promise to pay an at-will employee a bonus"); *Zigler v. Featherstone Foods, Inc.*, No. 20-CV-2462 (DLC), 2021 WL 149259, at *3 (S.D.N.Y. Jan. 15, 2021) (finding that the plaintiff's continued performance as an at-will employee following an oral agreement to pay a bonus was sufficient consideration); *Taylor v. Blaylock &*

---

[11]   These citations are to the first paragraphs 46 to 48.

Although *Kaplan* was decided before both *Twombley* and *Iqbal,* courts in this District have recently held similarly "sparse" details to be sufficient to survive a motion to dismiss. *See, e.g., Puchalski v. FM Constr., Inc.,* No. 18-CV-1596 (SJB), 2020 WL 6727777, at *2, *4 (E.D.N.Y. Nov. 16, 2020) (finding that the plaintiff had sufficiently alleged an oral agreement, although the details were "somewhat sparse," where the plaintiff alleged "the work to be done (steamfitting) and the wage rate"); *Fort Prods., Inc v. Men's Med. Clinic, LLC,* No. 15-CV-0376 (NSR), 2016 WL 797577, at *3 (S.D.N.Y. Feb. 23, 2016) (finding that the complaint contained sufficient non-conclusory allegations to survive a motion to dismiss where the complaint alleged that the defendant had retained the plaintiff for marketing and advertising services and had agreed to pay "the fair and reasonable value for such services").

31

*Partners*, 659 N.Y.S.2d 257, 258-59 (1st Dep't 1997) (same). The allegations that "[b]ut for [the oral agreement], [Plaintiff] would have resigned from [Defendant]" and that "[Plaintiff] provided additional consideration under this new oral Agreement in the form of his continued employment" (ECF 1, Compl. ¶ 42)[12] plead sufficient consideration to support an enforceable oral contract.

Accordingly, I respectfully recommend that Your Honor should **DENY** Defendant's motion to dismiss the claim for breach of an oral contract.

### III.    Plaintiff's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing

The Complaint alleges two breaches of the implied covenant of good faith and fair dealing, based on: (1) Defendant's failure to pay Plaintiff the second half of his annual bonus ($125,000) and to issue 8,000 stock options as required by the Offer Letter and (2) Defendant's failure to issue 2,000 shares as required by the oral agreement. (ECF 1, Compl. at ¶¶ 41-42, 48-49.)[13] Defendant argues that neither the Offer Letter nor the oral agreement qualifies as a contract, which means that neither would include an implied covenant, but that even if the agreements did qualify as contracts, the claims for breaches of the implied covenant should be dismissed as duplicative of Plaintiff's claims for breach of contract and breach of oral contract. (*See* ECF 67, Def.'s Mem. at 13.) Plaintiff counters that the claims are not duplicative, because his claims for breaches of the implied covenant are predicated on different conduct than his claims for breaches of contract. (*See* ECF 71, Pl.'s Opp. at 21.)

---

[12]    This citation is to the first paragraph 42.

[13]    These citations are to the second paragraphs 41, 42, and 48.

A.      Legal Principles

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). "This covenant is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Kamdem-Ouaffo*, 2018 WL 4386092, at *19 (quoting *O'Neil v. Warburg, Pincus & Co.*, 833 N.Y.S.2d 461, 463 (1st Dep't 2007)); *see also 511 W. 232nd Owners Corp.*, 98 N.Y.2d at 153-54 ("While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included.").

"Claims for breach of the implied covenant must be premised on a different set of facts from those underlying a claim of breach contract." *Kamdem-Ouaffo*, 2018 WL 4386092, at *19; *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016) (dismissing a claim for breach of the implied covenant of good faith and fair dealing because it "relie[d] on no facts distinct from the breach of contract claims."); *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564

(S.D.N.Y. 2004) ("[C]ourts routinely dismiss a claim for breach of an implied covenant of good faith as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract.").

      B.      <u>Analysis</u>

The claim for breach of the implied covenant fails in connection with the Offer Letter to the extent that the Offer Letter is not an enforceable contract; a claim for breach of the implied covenant requires a valid contract. *See Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 63 (1st Dep't 2012) ("There can be no claim of breach of the implied covenant of good faith and fair dealing without a contract.").

Even if Your Honor concludes that Plaintiff has adequately pleaded that the Offer Letter (or parts of it) is an enforceable contract, Plaintiff has not alleged different behavior to support his claims for breach of specific contract provisions in the Offer Letter and breach of the Offer Letter's implied covenant of good faith and fair dealing. Nor has Plaintiff alleged different behavior to support his claims for breach of specific provisions of the oral agreement and breach of the oral agreement's implied covenant.

Plaintiff asserts that his breach of contract claims "allege Defendant's failure to pay additional compensation owed," while his claims for breaches of the implied covenant "concern Defendant's alleged bad faith conduct in conspiring not to pay Plaintiff the compensation due." (ECF 71, Pl.'s Opp. at 21.) It is not clear to me what distinction Plaintiff is trying to make between the behavior on which he bases his claims for breaches of specific contract provisions and the behavior on which he bases his claims for breaches of the implied covenants in the Offer Letter and the oral agreement. Plaintiff uses nearly identical language to describe his claims for

breaches of contract and for breaches of the implied covenant of good faith and fair dealing. (*Compare id.* ¶¶ 38, 47 *with id.* ¶¶ 42, 49.)[14] Plaintiff's claims for breaches of the implied covenant of good faith and fair dealing should therefore be dismissed as redundant. *See Kamdem-Ouaffo*, 2018 WL 4386092, at *19-20 (dismissing a claim for breach of the implied covenant of good faith and fair dealing where the underlying facts were identical to those underpinning the plaintiff's breach of contract claim); *Cruz*, 720 F.3d at 125 (dismissing a claim for breach of the implied covenant as redundant where the claim "clearly rest[ed] on the same alleged deceptive practices" underlying a breach of contract claim); *Negrete*, 187 F. Supp. 3d at 470 (same); *Concesionaria*, 307 F. Supp. 2d at 564-65 (same); *Canstar v. J.A. Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (1st Dep't 1995) (dismissing a claim for "breach of an implied covenant of good faith and fair dealing [that was] intrinsically tied to the damages allegedly resulting from a breach of the contract" and therefore was "redundant").

Accordingly, I respectfully recommend that Your Honor should **GRANT** Defendant's motion to dismiss Plaintiff's claims for breaches of the implied covenant of good faith and fair dealing.

## IV.    Plaintiff's Quantum Meruit Claim

Plaintiff's final claim, pleaded in the alternative, is for quantum meruit. (*See* ECF 1, Compl. ¶¶ 51-59.) Defendant argues that Plaintiff fails to state a claim for quantum meruit because the Complaint does not allege any of the required elements and that to the extent that he alleges that he provided services to Defendant, he was compensated with his salary and the

---

[14]    These citations are to the first paragraph 38 and the second paragraphs 42 and 47.

first half of the bonus. (*See* ECF 67, Def.'s Mem. at 14-15.) Plaintiff counters that he needs to

plead only "a reasonable expectation of compensation for the services provided" (ECF 71, Pl.'s

Opp. at 21 (citing *JSO Assocs., Inc. v. Price*, 961 N.Y.S.2d 245 (2d Dep't 2013)) and that the

Complaint alleges that he had a reasonable expectation of being paid the second half the

annual bonus and of being granted 8,000 stock options because the bonus and stock options

were listed as part of his compensation. (*See* ECF 71, Pl.'s Opp. at 21.) Plaintiff contends that the

partial compensation he was paid (his salary and half his annual bonus) does not bar his

quantum meruit claim, because he did not receive his full compensation. (*See id.* at 21-22 (citing

*Farina v. Bastianich,* 984 N.Y.S.2d 46, 50 (1st Dep't 2014) for the proposition that a plaintiff

states an unjust enrichment claim by alleging that she provided services in good faith, which

were accepted by the defendants, and that she had a reasonable expectation of

compensation).)

A.    Legal Principles

To state a claim for quantum meruit under New York law, a plaintiff must allege: "(1) the

performance of services in good faith, (2) the acceptance of the services by the person to whom

they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of

the services." *Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.* 710 F. Supp. 3d 239, 245 (S.D.N.Y.

2024); *see also Nat'l Convention Servs., LLC v. Applied Underwrites Captive Risk Assur. Co.*, 239 F.

Supp. 3d 761, 794 (S.D.N.Y. 2017) (refusing to dismiss an unjust enrichment claim at the

pleading stage where the scope of the contractual obligations were in dispute); *Caribbean v.

Direct, Inc.*, 954 N.Y.S.2d 66, 66-67 (1st Dep't 2012) (reversing a grant of summary judgment

dismissing a quantum meruit claim where there was sufficient evidence regarding the value of the services provided).[15]

A claim for quantum meruit may not proceed if it is duplicative of a claim for breach of contract, and a court may raise the issue sua sponte. *See 4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) (dismissing a plaintiff's quantum meruit, unjust enrichment, and account stated claims sua sponte as they were duplicative of claims for breach of contract). However:

> Courts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract.

*Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.,* 748 F. Supp. 3d 234, 255-56 (S.D.N.Y. 2024) (collecting cases).

B.    Analysis

The Complaint offers the following allegations with respect to the quantum meruit claim:

- In or about November 2021, Defendant hired Plaintiff as its CRO. (*See* ECF 1, Compl. ¶ 9.)

- Defendant paid Plaintiff his $300,000 base salary and half his annual bonus for 2022 ($125,000). (*See id.* ¶ 12.)

- Plaintiff conferred benefits on Defendant by working as its CRO. (*See id.* ¶ 53.)

---

[15]    Under New York law, claims for quantum meruit and unjust enrichment are analyzed under the same framework, *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005), and so this report and recommendation relies on cases involving claims of unjust enrichment as well as claims for quantum meruit.

- Plaintiff obtained recurring bookings and non-recurring digital professional services bookings and other deals and projects "associated with the Company's product implementation and new customer onboarding," so that he was eligible for an award of 8,000 common stock options on time-based and performance-based criteria. (ECF 1-2, Offer Letter at 1-3.)

- Defendant knew or should have known that Plaintiff expected to receive the annual bonus and stock options based on his performance. (*See* ECF 1, Compl. ¶ 54.)

- Defendant knew or should have known that Plaintiff expected to receive additional stock under the 2023 oral agreement because he did not resign. (*See id.* ¶ 55.)

- Defendant continued to allow Plaintiff work on its behalf. (*See id.* ¶ 56.)

- Plaintiff suffered damages because of Defendant's failure to pay the second half of his annual bonus, failure to issue the stock options, and failure to provide additional stock. (*See id.* ¶ 58.)

As to the first element of the quantum meruit claim – the plaintiff's performance of services – Plaintiff alleges that he performed substantial work for Defendant by working as Defendant's CRO. (*See* ECF 1, Compl. ¶ 10.) Plaintiff's job title and the performance goals outlined in the attachment to the Offer Letter (*see generally* ECF 1-2, Offer Letter Ex. A) permit the inference that Plaintiff's work included selling Defendant's product and generating new customers and revenue.

As to the second element – acceptance by the defendant of the plaintiff's services – Defendant continued to employ Plaintiff as its CRO until May 2023 (*see* ECF 1, Compl. ¶¶ 23-24), which indicates that Defendant accepted Plaintiff's services.

As to the third element – expectation of compensation – Defendant argues that Plaintiff could have had no expectation of compensation, because there was no enforceable contract. (*See* ECF 67, Def.'s Mem. at 15). However, a quantum meruit claim may be brought only in the

absence of an enforceable contract. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."); *see also Nat'l Convention Servs.*, 239 F. Supp. 3d at 794 ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). Even if the Offer Letter and oral contract are not ultimately found to be enforceable contracts, Plaintiff was justified in expecting that he would be compensated for his services as set out in the Offer Letter and as discussed in connection with a potential oral contract. *See, e.g., Keybanc,* 710 F. Supp. 3d. at 246-47 (finding that the plaintiff had sufficiently alleged all of the elements of a quantum meruit claim where the complaint alleged that the plaintiff had performed "in good faith and with the expectation that it would be compensated for its work" and that the defendant had accepted the plaintiff's performance "with full knowledge and the expectation that they would be required to compensate [the plaintiff] for its professional services").

As to the fourth element – reasonable value – Plaintiff alleges that "[a] reasonable person under the circumstances would [have] expect[ed] Defendant to pay Plaintiff the greater of the $125,000 or the 2,000 additional shares and [to] issue the 8,000 stock options to which he was entitled under both the Offer Letter and the oral Agreement." (ECF 1, Compl. ¶ 57.) Under New York Law, "the adequacy of the compensation cannot be resolved on a motion to dismiss." *Foster v. Kovner*, 840 N.Y.S.2d 328, 333 (1st Dep't 2007) (reversing the trial court's dismissal of the plaintiff's unjust enrichment claim).

39

Plaintiff therefore has adequately pleaded each of the elements of a claim for quantum meruit. In light of the conclusion that Complaint fails adequately to plead a claim for breach of the Offer Letter, *see supra* Part I.A, the claim for quantum meruit is not duplicative of a claim for such a breach. And the claim for quantum meruit is not duplicative of the claim for breach of the oral agreement because "the validity and scope of the contract is difficult to determine" and "the parties dispute the existence of a contract." *Protex Indus.*, 748 F. Supp. 3d at 255-56; *Keybanc*, 710 F. Supp. 3d. at 247 (explaining that where a defendant has "already disputed the validity of the contract in question not just as a legal matter . . . but also as a factual matter," the Court should allow the plaintiff to proceed with the alternative claim in quasi contract); *Grant & Eisenhofer, PA v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 1809001, at *5 (S.D.N.Y. Apr. 20, 2015) ("Unjust enrichment may be pleaded in the alternative, but only where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue.").

For the foregoing reasons, I respectfully recommend that Your Honor should **DENY** Defendant's motion to dismiss Plaintiff's claim in the alternative for quantum meruit.

## V.    Leave To Amend

If Your Honor agrees that Plaintiff has failed adequately to plead claims for breach of contract (Count I) and breach of implied covenant of good faith and fair dealing (Counts III and IV), I respectfully recommend that Plaintiff be given leave to file an amended complaint that repleads the claim for breach of contract, even though he has not requested leave to amend and even though the Court is not obligated to grant such leave on its own initiative. *See, e.g., Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir.

2009). A "plaintiff need not be given leave to amend" where, as here, he "fails to specify . . . how amendment would cure the pleading deficiencies in [his] complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-5648 (GHW), 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021). However, "[i]n this circuit, [i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Leneau v. Ponte*, No. 16-CV-0776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Of course, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos*., 470 F.3d 481, 491 (2d Cir. 2006); *see also Moniodes*, 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021). "Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

I cannot conclude that amendment to the breach of contract claim would be futile. The pending motion is unusual in that Plaintiff is arguing that an extrinsic document – the Stock Option Plan – should be considered in connection with Defendant's motion to dismiss. In the typical case, it is the defendant that argues for consideration of extrinsic evidence. If the Court permits Plaintiff to amend, he can incorporate the provisions of the Stock Option Plan in the new complaint and perhaps provide further detail about the document. In so doing, he might be able to remedy the problem with his current pleading that the provisions in the Offer Letter on stock options omit material terms.

However, amendment to the claims for breach of implied covenant of good faith and fair dealing claims would be futile. While Plaintiff could potentially remedy the failure adequately to allege that the Letter Offer was a contract, as required for a claim for breach of an implied

41

covenant in the Letter Offer, the more fundamental flaw in the claims for breaches of the implied covenants in the Offer Letter and the oral agreement – that those claims are entirely duplicative of the claims for breaches of specific provisions of the Offer Letter and the oral agreement – is substantive and cannot be fixed by better drafting.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor should **DENY IN PART** Defendant's motion to dismiss the Complaint, in that the claims for breach of oral contract and for quantum meruit should not be dismissed; and I respectfully recommend that Your Honor should **GRANT IN PART** Defendant's motion to dismiss the Complaint, in that the claim for breach of the Offer Letter should be dismissed without prejudice to Plaintiff's filing of an amended complaint and the claims for breaches of the implied covenant of good faith and fair dealing should be dismissed with prejudice.

DATED:  January 28, 2026
        New York, NY

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation

42

pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Broderick.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 152 (1985).